UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Life Time Fitness, Inc,                          Case No. 12-CV-420 (DSD/SER)

   Plaintiff,

            **MEMORANDUM OF LAW IN**
v.                                               **SUPPORT OF PLAINTIFF'S**
            **MOTION FOR A TEMPORARY**
Daniel DeCelles,                                 **RESTRAINING ORDER AND**
            **EXPEDITED DISCOVERY**

   Defendant.

## PRELIMINARY STATEMENT

This case involves a personal trainer, Daniel DeCelles ("DeCelles"), who was bound by contractual, statutory, and common law duties to his former employer, Life Time Fitness, Inc. ("LTF"). DeCelles surreptitiously took LTF's property, including signed contracts between LTF and its members for personal trainer services, containing members' personal information, member contact information, and proprietary information related to LTF's business. In addition, DeCelles obtained confidential information regarding LTF's compensation of personal trainers and personal contact information for those trainers. DeCelles left his employment with LTF with the express intention of directly competing with LTF. He took confidential and proprietary information prior to resigning from LTF and used it, first with a local chiropractic clinic, and then brought the confidential and proprietary information to Pro Fitness LLC, ("Pro Fitness"), a competitor of LTF. DeCelles then solicited existing LTF members to join Pro Fitness for personal training services. In addition, DeCelles, with Pro Fitness,

solicited personal trainers employed by LTF for employment with Pro Fitness. DeCelles's conduct is in breach of the non-compete and confidentiality agreement, the non-solicitation agreement, and the Code of Business Conduct and Ethics Receipt and Agreement, all of which he signed as conditions of employment with LTF, as well as his common law and statutory obligations. Upon learning in late January of 2012 of DeCelles's unlawful actions, LTF promptly sent cease and desist letters to both LTF and Pro Fitness on February 6, 2012. (*See* Declaration of Nick Campbell ("Campbell Decl."), ¶ 29 and Exhibit 3.) DeCelles refused to respond or to cease and desist his unlawful activities. LTF therefore brings this motion for a Temporary Restraining Order to prevent DeCelles's continued breach his contractual, statutory and common law obligations and to preserve the status quo.

## STATEMENT OF FACTS

### A. Life Time Fitness

LTF is a Minnesota corporation with its headquarters in Chanhassen, MN. (Verified Complaint ¶ 1) LTF operates fitness centers and clubs across the country and prides itself on delivering certified professional trainer services and assisting members in achieving a healthier way of life and other fitness goals. (*Id*., ¶ 6-7.) LTF provides many services to its members, including but not limited to personal training. (*Id.*) As part of its business and in providing personal training services, LTF tracks historical information related to member use of LTF centers; it keeps confidential health information related to members' efforts to promote healthy exercise habits and achieve fitness goals; it develops program sheets tracking each workout a trainer and member has completed and

describing workouts assigned to members; and maintains other confidential information related to LTF members and their fitness goals. (*Id.*)

## B. Daniel DeCelles

On or about June 28, 2010, LTF hired DeCelles as a personal trainer at its Tempe facility located at 1616 West Ruby Drive, Tempe, AZ 85254, which is one of five LTF locations in Arizona. (Campbell Decl ¶ 2-3.) As a condition of and prior to beginning his employment, DeCelles executed a Personal Trainer Confidentiality Agreement and Non-Compete/Non-Solicitation Agreement ("Agreement") with LTF on June 16, 2010. (*See* Exhibit 1 to Verified Complaint, filed concurrently.)

LTF required DeCelles to sign the Agreement because, as a personal trainer, DeCelles would have access to certain valuable proprietary and confidential information about both LTF and its members, including personal contact and health information of its members, workout sheets developed and used by LTF and its personal trainers to track member training progress and goals, employee lists and contact information, information relating to the prices that LTF charges members for personal training and other services, information relating to LTF's relationships and pricing agreements with vendors, and historical information regarding the locations and LTF services that each of its members used. (Verified Complaint ¶ 9.)

During his employment, Decelles also signed a Code of Business Conduct and Ethics Receipt and Agreement, stating that he had received, read, and understood LTF's Code of Business Conduct and Ethics (the "Code"). (*Id.* ¶ 17.) The Code states the following with regard to Intellectual Property:

> "Intellectual Property" includes: trade secrets, patents, trademarks and copyrights, as well as customer or member lists (including the customer lists kept by massage therapists, stylists, personal trainers and membership advisors) . . . Unauthorized use or distribution of our intellectual property violates the Code and could also be illegal and result in civil and/or criminal penalties.

(*See* Exhibit 2 to Verified Complaint.)  The Code further provides:

> Confidential Information includes all non-public information that might be of use to competitors, or harmful to the Company and its members, if disclosed.  The obligation to preserve confidential information continues even after employment ends.

(*Id.*)  DeCelles's actions violate the Code.

## C.    DeCelles's Agreement

The Agreement DeCelles signed contains the following terms and covenants, among others:

> 2.    "Confidential Business and Proprietary Information" ("CBPI") means any information or material that (a) is not generally known other than by LTF, (b) is reasonably determined to be confidential and (c) Employee may obtain knowledge about as a result of employment with LTF.  CBPI also includes, but is not limited to:
>
> a.    personal information regarding members/clients/customers/ employees, including telephone numbers, addresses, other contact information, and historical information regarding those individuals' use of LTF centers or services, including but not limited to all information retrieved or downloaded from the Member Management System ("MMS") or other information available on the Life Time Fitness Intranet;
> b.    information regarding future club openings;
> c.    promotional materials;

d.      information about LTF's business methods, forms, and marketing techniques;
e.      information about the cost of providing services to members;
f.      information about the compensation plan for personal trainers, including but not limited to the level system;
g.      information regarding the transactions and business affairs of LTF, including but not limited to strategic business development, planning, and operations;
h.      confidential member/client/customer/employee/vendor information covered by non-disclosure or similar agreements between LTF and members/clients/customers/employees/vendors;
i.      confidential member health history records, workout files and other information relating to the private affairs of LTF members;
j.      contracts/addendums/workout sheets used for or made with LTF clients/customers/members;
k.      programs sheets, which describe the workouts a trainer and client have done during their sessions together or describe the workouts assigned to a client by a trainer;
l.      images of LTF facilities/members/customers/clients/employees.

The term "CBPI" shall not include any information that: (a) is or becomes generally available to the public other than as a result of a disclosure by Employee; or (b) becomes available to Employee on a non-confidential basis from a source other than LTF, which has represented that it is entitled to disclose it.

3.      The "Covered Geographic Area" is the area within a five (5) mile radius from any place of business owned by or affiliated with LTF that offers or intends to offer personal training.

Binding Covenants

The following terms govern and control the parties under this Agreement.

1.      Non-Disclosure of Trade Secrets and CBPI

Unless to directly benefit LTF and to allow my performance of my job duties as a personal trainer, I agree to not directly or indirectly use CBPI at any time during my employment at LTF. I further agree that, except as required by my job duties at LTF, I will not, directly or indirectly, during my employment at LTF or thereafter, use or disclose CBPI to any person or organization, unless authorized in writing by a person of authority at LTF.

I further understand and agree that some CBPI may qualify as a "trade secret," and I will not directly or indirectly disclose any such trade secret at any time during the term of this Agreement and or after the termination of my employment with LTF.

2.     Covenant Not to Solicit the Business of LTF Members, Customers, Clients, and Employees

I agree that during the term of my employment and for a period of twelve (12) months after my termination at LTF, Employee will not directly or indirectly, on behalf of myself or any other person or entity:

a.     call upon LTF's members (including those solicited, obtained, serviced and/or maintained by Employee) for the purpose of soliciting and/or providing personal training-related services;
b.     canvas, solicit, or accept any similar or competitive personal training-related business from any customer, member, employee and/or client of LTF;
c.     induce customers, members, employees and/or clients to patronize any Competing Business offering or intending to offer personal training; or
d.     request, advise, assist, or in any way facilitate any customer, member, or client of LTF to withdraw, reduce or cancel its business relationship with LTF.

3.     Covenant Not to Solicit LTF Employees for other Employment

I agree that during the term of my employment and for a period of twelve (12) months after my termination at LTF, I will not directly or indirectly, on behalf of myself or any other person or entity:

a.      request, advise, assist, or in any way facilitate any employee or supplier of LTF to withdraw, reduce, or cancel its business or employment relationship with LTF; or

b.      induce, solicit, request or advise any of LTF's employees to accept employment with any Competing Business or otherwise take any action detrimental to the relationships between LTF and its employees.

4.      <u>Covenant Not to Compete</u>

I agree that during the term of my employment with LTF and for a period of nine (9) months after my termination at LTF, I will not, directly or indirectly, on behalf of myself or any other person or entity:

a.      be employed by or serve as an independent contractor or consultant to any Competing Business within the Covered Geographic Area; or

b.      advertise, market, sell, take orders for, or provide Personal training-related services for any Competing Business in the Covered Geographic Area.

If a court of competent jurisdiction holds that the restrictions contained in this paragraph are unreasonable under circumstances then existing, the parties to this Agreement agree that the Court shall substitute the maximum period, scope, or geographical area reasonable under the circumstances.

5.      <u>Return of Documents</u>

I agree that, upon request of LTF and/or my termination at LTF, I shall turn over to LTF any and all tangible items supplied to me by LTF (including but not limited to CBPI), all member lists, and employee lists. The return of such documents and information includes the return of these materials, in electronic form or otherwise, that are in my possession or under my direct or indirect control.

6.    Remedies

LTF and Employee agree that immediate irreparable damage will result to LTF if Employee breaches any of the covenants set forth in this Agreement.  Therefore, in the event of Employee's breach of the provisions herein, whether direct or through Employee's agents or other persons acting with or for Employee, Employee consents to LTF's specific enforcement of this Agreement through an injunction or restraining order.  Injunctive relief shall be in addition to any other remedies or damages available at law or in equity.  Those damages include, but are not limited to attorney's fees and expenses incurred by LTF, lost profits, and liquidated damages.  Employee will be responsible for LTF's costs and attorneys' fees it incurs as a result of LTF having to enforce any provisions in this Agreement.

(*See* Exhibit 1 to Verified Complaint.)

**D.    DeCelles Takes LTF Property, Quits and Joins a Competitor.**

DeCelles voluntarily left his employment with LTF on November 12, 2011. (Campbell Decl. ¶ 16.) Before he announced his resignation, DeCelles surreptitiously stole 30-40 LTF member files.  (Verified Comp. ¶ 24.)  As a LTF employee, DeCelles provided personal training services to these members.   The files contained LTF's proprietary and confidential information relating to its members, as well as contact information relating to LTF employees.  (*Id.*)  Upon information and belief, DeCelles immediately began working for Arizona Spine and Disc, a chiropractic clinic located approximately two miles away from LTF's Tempe facility.  (*Id.* at ¶ 25-26; *see also* Declaration of V. John Ella, Ex. 1 (print out from Google Maps).)  DeCelles performed personal training services for Arizona Spine and Disc.  (*Id.*)  LTF management immediately contacted and met with the owners of Arizona Spine and Disc, explained the

nature of DeCelles's non-compete obligations under his Agreement with LTF, and demanded that Arizona Spine and Disc cease employing DeCelles. (Campbell Dec. ¶ 23.) Arizona Spine and Disc's owners agreed to terminate DeCelles's employment. (Verified Complaint ¶ 26.)

Thereafter, in late January 2012, LTF learned DeCelles was again directly competing by working for Pro Fitness, an entity engaged in similar business as LTF, at a location only 2.8 miles away from LTF's Tempe location, at 7420 S. Rural Road, Tempe, AZ 85283. (*Id.* at 28-30.) *See also*, Declaration of V. John Ella, Ex. 2 (Print out from Google Maps showing a driving distance of 2.8 miles between the two locations). Within days, numerous personal trainers employed by LTF received text messages that appeared to be from potential members seeking personal training information. (*Id.* at ¶ 33.) Trainers then received phone calls from the owner of Pro Fitness asking them to come to work for Pro Fitness (*Id.*) In addition, soon after DeCelles's departure, several LTF members who previously received personal training services from DeCelles at LTF cancelled their LTF memberships. (*Id., ¶* 34-35.) Many requested refunds for money they had paid for personal trainer services and requested copies of their contracts with LTF for personal trainer services, which LTF could not provide because DeCelles had unlawfully confiscated the files. (*Id.*, ¶ 37.)

As a result of his employment at LTF, DeCelles gained significant knowledge of and had access to information regarding LTF's pricing information, client account information, sales techniques, computer programs, and a wide variety of LTF's other confidential, proprietary, and trade secret information. (Campbell Dec. at ¶ 14.) LTF

believes DeCelles has already used this information to his own benefit and the benefit of his new employer, Pro Fitness, and will continue to use this information wrongfully. *Id.*

It is clear that DeCelles's conduct is part of a preconceived scheme to unfairly exploit and erode LTF's goodwill and competitive position. Upon learning of DeCelles's egregious and unlawful acts, on February 6, 2012, LTF sent cease and desist letters to DeCelles and Pro Fitness. (Campbell Dec. at ¶ 29 and Exhibit 1.) LTF reminded DeCelles of his obligations under his Agreement with LTF and the Code.

The documents and information improperly taken by DeCelles include original signed contracts between LTF and its members for personal trainer services; personal health information related to LTF members; LTF member contact information; proprietary information related to LTF's business methods, marketing techniques, the cost of providing services to members, and historical information related to LTF's members; information regarding member use of LTF's centers or services; confidential information regarding LTF's compensation plan for personal trainers; and personal contact information for those trainers. (*Id.,* ¶ 35; Verified Comp. ¶ 9.)

DeCelles also breached his covenants under the Agreement by soliciting both customers and employees of LTF. In fact, DeCelles breached almost every aspect of his Agreement, as well as his duty of loyalty.

## ARGUMENT

## I.  LEGAL STANDARD

A request for a Temporary Restraining Order is governed by Rule 65(b) of the Federal Rules of Civil Procedure. The Rule requires a showing that "immediate and

irreparable injury, loss, or damage" will result unless an injunction is issued. Fed. R. Civ. P. 65(b).

In determining whether to grant a temporary restraining order, the Court must consider: (1) the threat of irreparable harm to LTF; (2) the balance of this harm and any injury that granting the injunction will inflict on DeCelles; (3) LTF's likelihood of success on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C. L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981); *International Ass'n of Machinists v. Northwest Airlines, Inc.*, 674 F. Supp. 1387, 1391 (D. Minn. 1987).

## II.  MINNESOTA LAW APPLIES TO THE AGREEMENT.

The Agreement provides that the Court shall construe and enforce the Agreement pursuant to Minnesota law. (*See* Ex. 1 to Verified Complaint, § 8.) In signing the Agreement, DeCelles also consented to the jurisdiction of Minnesota's federal and state courts, and agreed that Minnesota's state and federal courts are the exclusive forum for litigation regarding the Agreement. (*Id*.) Both the District of Minnesota and the Eighth Circuit have enforced choice of forum clauses in non-compete cases such as this. *See, e.g., Retek, Inc. v. Cox*, No. 03-4345 (JRT/FLN), 2003 U.S. Dist. LEXIS 15061 (D. Minn. 2003) (Finding personal jurisdiction and proper venue in District of Minnesota in action to enforce non-competes against employee living in Oklahoma based on forum selection clause). *See also, N.I.S. Corp. v. Swindle*, 727 F.2d 707 (8th Cir. 1984) (Affirming decision from Western District of Missouri to enforce choice of forum clause in non-compete action against insurance agents from different states).

## III.    DECELLES IS CAUSING LTF IRREPARABLE HARM.

Irreparable harm may be "inferred" from the breach of a restrictive covenant in an employment contract. *Thermorama, Inc. v. Buckwold*, 267 Minn. 551, 552-53, 125 N.W.2d 844, 845 (1964); *accord Eutectic Welding Alloys Corp. v. West*, 160 N.W.2d 566, 569, n. 4 (1968) (stating an "inherent threat of irreparable injury may be inferred from the breach of an otherwise valid and enforceable restrictive covenant sufficient to invoke at least temporary equitable relief"). *See also Overholt Crop Ins. Service Co., Inc. v. Bredeson*, 437 N.W.2d 698, 701 (Minn. Ct. App. 1989). DeCelles acknowledged in the Agreement that a breach would cause irreparable harm to LTF. (Ex. 1 to Verified Complaint.) As its states, "LTF and Employee agree that immediate irreparable damage will result to LTF if Employee breaches any of the covenants set forth in this Agreement." (*Id.* at ¶ 6.)

Minnesota law also recognizes irreparable harm in cases like this, when "a former employee trades on good will established while working for a former employer or where a professional exercises personal influence over…clients of a former employer." *Bromen Office 1, Inc. v. Coens*, No. A04-946, 2004 WL 2984374 at *2 (Minn. Ct. App. Dec. 28, 2004). *See Rosewood Mortgage Corp. v. Hefty*, 383 N.W.2d 456, 459 (Minn. Ct. App. 1986) (holding that irreparable harm is inferred from breach of a covenant not-to-compete where an employee "acquire[d] a personal influence over patients or clients of their employer").

This is exactly what DeCelles is doing here. LTF's business depends on its relationships and goodwill with its customers. For these reasons, companies in the

personal fitness industry, such as LTF, commonly enter into non-compete and non-solicit agreements with their sales representatives. DeCelles is using the relationships and goodwill that he developed while on LTF's payroll to drive customers and LTF employees to his new employer, Pro Fitness. Avoiding this situation is precisely why LTF requires its employees sign non-compete and non-solicitation agreements. A temporary restraining order is necessary to protect LTF's remaining goodwill and relationships while the merits of this case are resolved.

## IV.    THE BALANCE OF HARMS FAVORS LTF.

LTF's motion seeks only to enforce the agreement that DeCelles signed, and to prevent further irreparable harm from DeCelles's wrongful acts. DeCelles will suffer no harm if the Court issues the injunction; he will simply have to abide by the promises he made when he joined LTF. An injunction will not prevent him from working in the personal training industry. Rather, he must only work at least five miles from any LTF facility, and only until August 12, 2012.

While DeCelles will suffer no harm, LTF will continue to suffer tremendous harm if DeCelles is allowed to continue his competition and solicitation efforts. LTF will continue to suffer financial harm, loss of members and employees, and irreparable harm to its goodwill and reputation.

## V.    LTF WILL SUCCEED ON THE MERITS.

DeCelles signed an enforceable non-compete and non-solicitation Agreement and blatantly undertook efforts to direct violate those contracts prior to and after he resigned from LTF. LTF will succeed on the merits of its claims.

**A.     The Covenants in the Agreement Are Reasonable and Are Enforceable.**

The Agreement in this case is very reasonable. Although many covenants not to compete last up to two years and cover the entire United States, the non-compete restriction  LTF asks the Court to enforce in this case is only for nine months and for a radius of five miles from any LTF facility.  (Ex. 1 to Verified Complaint, ¶ 4.)  There are five LTF facilities in Arizona and only one in Tempe, where DeCelles works and is unlawfully competing.

The Agreement is valid because it was supported by adequate consideration. Minnesota law is well-established that a promise of employment is sufficient consideration to support non-compete agreements. *See, e.g., Overholt*, 437 N.W.2d at 702; *National Recruiters v. Cashman*, 323 N.W.2d 736, 740 (Minn. 1982). Here, the DeCelles Agreement was clearly signed as a condition of and in consideration of his employment with LTF as a personal trainer.  (*Id.,* § 1.; s*ee also* Campbell Decl. ¶4.)

LTF's right to relief is clearly set forth in the express language of DeCelles' Agreement.   The Agreement contains DeCelles' express written promises (i) not to engage in employment with or act as an independent contractor for a Competing Business of LTF for a period of nine months after terminating his employment with LTF; (ii) not to disclose or use the Confidential Business and Proprietary Information and trade secret information of LTF  (iii) not to solicit the business of LTF members, customers, clients, or employees, and (iv) not to induce any of LTF's employees into reducing or canceling their business or employment relationships with LTF or solicit LTF employees into accepting employment or entering into business relationships with any Competing

Business.  (Verified Complaint Ex, 1.)  Moreover, the Agreement clearly contemplates injunctive relief for violations of the restrictions contained in Paragraph 6.  (*Id.*) ("…Employee consents to LTF's specific enforcement of this Agreement through an injunction or restraining order."))  DeCelles has plainly breached the terms he agreed to when he signed the Agreement.

The provisions of DeCelles's Agreement prohibiting him from using or disclosing LTF's confidential information and the solicitation of LTF's clients clearly are enforceable under Minnesota law.  Moreover, the provision in the Agreement which states DeCelles cannot "be employed by or serve as an independent contractor or consultant to any Competing Business within the Geographic area" for "a period of nine (9) months after [his] termination at LTF" is also enforceable.

**B.    LTF's Client Information is Entitled to Trade Secret Protection under Arizona Law.**

LTF is also entitled to immediate injunctive relief to protect its trade secret information from misappropriation by DeCelles.  The Arizona Uniform Trade Secrets Act, A.R.S. §§ 44-401, *et seq.*, expressly provides for injunctive relief to protect an employer's trade secrets.[1]

---

[1]The Uniform Trade Secrets Act defines a trade secret as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

Client information and pricing information are entitled to trade secret protection, even in the absence of the express covenants signed by DeCelles.  In *Gable-Leigh, Inc. v. North American Miss*, No. CV 01-01019 MMM (ANX), 2001 WL 521695 (C.D. Cal. April 13, 2001), the court applied California's virtually identical Uniform Trade Secrets Act and enjoined the employee from using her former employer's client list to solicit plaintiff's clients.  Indeed, applying the Uniform Trade Secrets Act and analogous Restatement standards, courts throughout the country repeatedly have accorded client lists trade secret status.  *See, e.g., Corporate Express Office Products, Inc. v. Martinez,* No. CV-SA02-87 AHX (ANX), 2002 WL 31961458 * 3 (C. D. Cal. March 8, 2001) (customer lists and the contact information of the person(s) with purchasing authority or influence are trade secrets under California Trade Secret Act); *IDS Life Ins. Co. v. Smithson*, 843 F. Supp. 415, 418 (N.D. Ill. 1994) (finding Illinois Trade Secrets Act, ILCS 1065/2(d), protected IDS's interest in confidential information such as customer identity, addresses, and financial information).

The law is the same in Minnesota, which has also adopted the Uniform Trade Secret Act.  *See Widmark v. Northrup King Co.*, 530 N.W.2d 588, 592-593 (Minn. Ct. App. 1995) (holding that customer information can constitute a trade secret); *Surgidev Corp. v. Eye Technology, Inc.*, 828 F.2d 452, 455-56 (8th Cir. 1987) (same, applying Minnesota law).

---

(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* at § 44-401(4) (emphasis added).

The "economic value" of the trade secret information taken by DeCelles is significant. This information is not generally known or readily ascertainable by proper means by any of LTF's competitors.[2] And yet these competitors could obtain significant economic value from the disclosure and use of this information. In addition, as evidenced by the confidential information and non-disclosure provisions in DeCelles' Agreement and the provisions in its Code, LTF takes the protection of this information seriously. In sum, LTF is entitled to a temporary restraining order and a preliminary injunction both to enforce the provisions of LTF's Agreement and to protect its trade secret client information, as well as a substantial amount of other trade secret information.

**C.    DeCelles has Engaged in a Pattern of Unfair Conduct.**

Based on the information LTF has recently uncovered about DeCelles, it appears that DeCelles has engaged in a pattern of unfair and deceptive conduct for the sole purpose of obtaining an unfair advantage over his former employer, LTF, in the highly competitive personal training and health club business. As described above, LTF learned that during his employment with LTF, DeCelles stole as many as 40 member files and, it appears, took significant steps to disclose this information to one of LTF's direct competitors, Pro Fitness. Upon information and belief, DeCelles engaged in the following conduct, all of which breached his Agreement with LTF: (1) he stole

---

[2] By taking the only copies of these customer files, DeCelles not only gained a competitive advantage, he interfered with LTF's ability to continue to work with its own members. LTF will be successful on the merits showing that his actions constitute conversion. DeCelles should be ordered to return the documents immediately.

confidential member files that are LTF's property; (2) he took confidential LTF employee contact information for his own personal use; (3) he disclosed the wrongfully obtained trade secrets and confidential LTF proprietary information to direct competitor Pro Fitness; (4) he began working for direct competitor Pro Fitness at a location *only 2.8 miles* away from LTF's Tempe location; (5) he solicited LTF members in an attempt to lure their business away from LTF and to Pro Fitness; and (6) he sent text messages to LTF's personal trainers in an attempt to lure them away from LTF and recruit them to work for Pro Fitness.

## VI. THE PUBLIC INTEREST FAVORS AN IMMEDIATE INJUNCTION.

Public policy supports an injunction under these circumstances. Courts in this district have recognized that "the public interest is served by upholding valid restrictive covenants." *Millard v. Electronic Cable Specialists*, 790 F. Supp. 857, 863 (D. Minn. 1992). Minnesota courts also recognize an employer's right to enforce reasonable non-compete agreements. *See, e.g.*, *Kallok*, 573 N.W.2d at 361; *Bennett v. Storz Broad. Co.*, 134 N.W.2d 892, 898 (Minn. 1965). Here, enjoining DeCelles's wrongful conduct will encourage lawful commercial conduct and foster respect for contractual obligations. The public interest therefore supports granting LTF's motion.

## VII. PLAINTIFF'S REQUEST FOR RELIEF

Based on the arguments above, and pursuant to Rule 65 of the Federal Rules of Civil Procedure, LTF requests that a temporary restraining order be issued enjoining DeCelles from directly or indirectly, whether alone, through an LLC or other corporate

entity, or in concert with others, including any officer, agent, employee, and/or representative of Pro Fitness:

1. Being employed by, contracting with, or being connected in any manner with, any business competitive with LTF within a five (5) mile radius of any place of business owned or affiliated with LTF that offers or intends to offer personal training for a period of nine (9) months commencing on November 12, 2011, and ending on August 12, 2012;

2. Calling upon any of LTF's members, customers, or clients for the purpose of soliciting or selling to any such persons any products or services similar to those of LTF for a period of twelve (12) months commencing on November 12, 2011, and ending on November 12, 2012;

3. Providing services to, diverting or taking away any of LTF's clients for a period of twelve (12) months commencing on November 12, 2011, and ending on November 12, 2012;

4. Soliciting any of LTF's employees for a period of twelve (12) months commencing on November 12, 2011, and ending on November 12, 2012;

5. Communicating, disclosing, divulging or furnishing any of LTF's confidential and proprietary information or trade secrets to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever;

6. Using any of LTF's confidential and proprietary information or trade secrets for his own business, gain, or benefit; or

7. Interfering with LTF's current prospective business relations.

Plaintiff LTF also asks that the Court issue a Temporary Restraining Order and Preliminary Injunction requiring DeCelles to:

1. Immediately cease employment with Pro Fitness;

2.     Return all of LTF's confidential, proprietary, and trade secret information in his possession and control, including, but not limited to, all member files and contracts; and

3.     Preserve all documents and data of any nature whatsoever, including but not limited to electronic documents, electronic mail, and corporate documents of or relating to LTF or Pro Fitness, and prohibiting DeCelles from destroying any documents or data of any nature whatsoever during the pendency of this action.

## VIII.  THE COURT SHOULD ALLOW EXPEDITED DISCOVERY.

LTF further respectfully requests expedited discovery pursuant to Rule 26(b) of the Federal Rules of Civil Procedure.  The non-compete contained in the Agreement expires on August 12, 2012, less than six months from now.  LTF therefore requests an expedited discovery schedule allowing LTF to, *inter alia*, take DeCelles's deposition and send written discovery requests without the requirement of a Rule 26 meeting or Rule 16 conference. Expedited discovery is commonly allowed in non-compete cases. *E.g. LEXIS-NEXIS v. Beer*, 41 F. Supp.2d 950 (D. Minn. 1999) and *Hutchinson Technology Corporation v. Magnecomp Corp.*, No. 06-1703 (JNE/SRN), 2006 U.S. Dist. LEXIS (D. Minn. 2006).

## CONCLUSION

While employed by LTF, DeCelles breached his duty of loyalty and devised a scheme to directly compete with LTF.  He surreptitiously stole confidential and proprietary member files and other proprietary information prior to announcing his resignation from LTF's employ.  DeCelles then immediately began competing directly

with LTF by working first for a local chiropractic clinic. When that organization learned of DeCelles's contracts with LTF, it terminated his employment. Not to be deterred, DeCelles sought new avenues to compete with LTF and solicit its members and employees and he began employment with Pro Fitness. DeCelles has blatantly breached his contracts with LTF and has violated his contractual, statutory, and common law obligations.

LTF has shown a likelihood of success on the merits that it will suffer irreparable harm and that it is without an adequate remedy at law, that the balance of harms favors granting injunctive relief, and that granting injunctive relief serves the public interest. Accordingly, LTF respectfully requests that the Court issue a Temporary Restraining Order.

Dated: February 17, 2012.              JACKSON LEWIS LLP


                                        *s/V. John Ella*
                                        V. John Ella #249282
                                        Sarah M. Fleegel #034557X
                                        225 South Sixth Street, Suite 3850
                                        Minneapolis, MN  55402
                                        (612) 341-8131

                                        ATTORNEYS FOR PLAINTIFF LIFE TIME
                                        FITNESS, INC.

4847-2436-5838, v. 2