```
            UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
              Civil No. 12-420(DSD/SER)
```

Life Time Fitness, Inc.,

      Plaintiff,

v.                                                **ORDER**

Daniel DeCelles,

      Defendant.

    V. John Ella, Esq., Sarah M. Fleegel, Esq. and Jackson Lewis, LLP, 225 South Sixth Street, Suite 3850, Minneapolis, MN 55402, counsel for plaintiff.

    Leslie M. Witterschein, Esq., James A. Wahl, Esq. and Monroe, Moxness & Berg, PA, 8000 Norman Center Drive, Suite 1000, Bloomington, MN 55437 and Lee Henman, Jr., Esq. and Henman Law Firm, PC, 3131 East Camelback Road, Suite 200, Phoenix, AZ 85016, counsel for defendant.

    This matter came before the court on February 27, 2012, upon the motion for temporary restraining order (TRO) by plaintiff Life Time Fitness, Inc. (LTF). LTF and defendant Daniel DeCelles appeared through counsel. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the TRO in part.

## BACKGROUND

    LTF is a Minnesota corporation with health and fitness clubs across the nation, including five locations in Arizona. See Compl. ¶¶ 1, 5. LTF provides personal training services, with the goal of

"promot[ing] healthy life styles and help[ing] ... [clients] meet fitness goals." Id. ¶ 7. DeCelles began working at the Tempe, Arizona LTF location on 1616 West Ruby Drive as a personal trainer on June 28, 2010. His primary responsibilities at LTF included recruiting new members; creating and conducting workout programs for existing members; and tracking members' "health history, workout routines, completed workouts, data regarding LTF services ... and personal contact information." Id. ¶ 8.

DeCelles signed a personal trainer employment agreement (Agreement) as a condition of employment. The Agreement required DeCelles to not "directly or indirectly use [confidential business and proprietary information[1] (CBPI)] at any time during ... employment at LTF." Campbell Decl. Ex. 1, at 3. DeCelles also could not "directly or indirectly, during ... employment at LTF or thereafter, use or disclose CBPI to any person or organization, unless authorized in writing by a person of authority at LTF." Id. Upon termination of employment, DeCelles further agreed to "turn over to LTF any and all tangible items supplied ... by LTF (including but not limited to CBPI), all member lists, and employee lists." Id. at 4.

---

[1] Confidential business and proprietary information includes "any information or material that (a) is not generally known other than by LTF, (b) is reasonably determined to be confidential and (c) Employee may obtain knowledge about as a result of employment with LTF." Campbell Decl. Ex. 1, at 2.

2

The Agreement also included several covenants:

> 2. <u>Covenant Not to Solicit the Business of LTF Members, Customers, Clients, and Employees</u>
> I agree that during the term of my employment and for a period of twelve (12) months after my termination at LTF, ... [I] will not directly or indirectly, on behalf of myself or any other person or entity:
> a. call upon LTF's members (including those solicited, obtained, serviced and/or maintained by Employee) for the purpose of soliciting and/or providing personal training-related services;
> b. canvas, solicit, or accept any similar or competitive personal training-related business from any customer, member, employee and/or client of LTF;
> c. induce customers, members, employees and/or clients to patronize any Competing Business offering or intending to offer personal training; or
> d. request, advise, assist, or in any way facilitate any customer, member, or client of LTF to withdraw, reduce or cancel its business relationship with LTF.
>
> 3. <u>Covenant Not to Solicit LTF Employees for other Employment</u>
> I agree that during the term of my employment and for a period of twelve (12) months after my termination at LTF, I will not directly or indirectly, on behalf of myself or any other person or entity:
> a. request, advise, assist, or in any way facilitate any employee or supplier of LTF to withdraw, reduce or cancel its business or employment relationship with LTF; or
> b. induce, solicit, request or advise any of LTF's employees to accept employment with any Competing Business or otherwise take any action detrimental to the relationships between LTF and its employees.
>
> 4. <u>Covenant Not to Compete</u>
> I agree that during the term of my employment with LTF and for a period of nine (9) months after my termination at LTF, I will

>    not, directly or indirectly, on behalf of myself or any other person or entity:
>         a. be employed by or serve as an independent contractor or consultant to any Competing Business within the Covered Geographic Area;[2] or
>         b. advertise, market, sell, take orders for, or provide Personal training-related services for any Competing Business in the Covered Geographic Area.

Id. at 3-4.

DeCelles left his employment with LTF on November 12, 2011, and allegedly took thirty to forty LTF client files to his new employer, Arizona Spine and Disc. See id. ¶ 16; Compl. ¶¶ 24-26. After LTF contacted Arizona Spine and Disc regarding the terms of the Agreement, Decelles's employment was terminated. See Compl. ¶ 26. In late January DeCelles began working at Pro Fitness (PF). See Campbell Decl. ¶ 23; Compl. ¶ 26. PF is a personal-fitness facility engaged in a business similar to LTF. See Compl. ¶ 28-30. PF is located at 7420 S. Rural Road, roughly 2.8 miles from LTF's Tempe location. Ella Decl. Ex. 2.

Since joining PF, several LTF personal trainers have received phone calls on their personal phones from the owner of PF asking them to join the PF staff. See Compl. ¶ 33. Further, several LTF members who DeCelles previously trained have cancelled their memberships and requested refunds for money paid for personal

---

[2] A "covered geographic area" includes "the area within a five (5) mile radius from any place of business owned or affiliated with LTF that offers or intends to offer personal training." Campbell Decl. Ex. 1, at 2.

training.  See id. ¶¶ 34-35.  LTF is required to issue refunds without a copy of the original member contracts, which LTF alleges DeCelles stole.  Id. ¶ 37.

On February 17, 2012, LTF moved for a TRO, and the court scheduled a hearing for February 27, 2012.  Following oral argument, the court advised the parties to confer and submit a joint proposed order by the end of the business day.  The parties did not reach agreement, and the court now addresses the motion.

## DISCUSSION

### I. Personal Jurisdiction

DeCelles argues that the court lacks personal jurisdiction. "Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." Dominum Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 728 (8th Cir. 2001) (citations omitted).[3] "Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid ...." M.B. Rests. Inc. v. CKE Rests., Inc., 183 F.3d 750, 752 (8th Cir. 1999) (citation omitted).  The Agreement states that "both parties agree that venue shall be proper in the state and federal courts of Minnesota." Campbell Decl. Ex. 1, at 5.  DeCelles does not argue

---

[3] The court notes that only a prima facie showing of jurisdiction is necessary at the TRO stage. Coen v. Coen, 509 F.3d 900, 904 (8th Cir. 2007).

that the forum selection clause is improper.  Therefore, DeCelles has consented to personal jurisdiction in Minnesota.

DeCelles next argues that the court must determine whether the forum selection clause is permissive or mandatory prior to entering a TRO.  The court disagrees.  See, e.g., Bel Canto Design, Ltd. v. MSS HiFi, No. 11-cv-2126, 2011 WL 4036409, at *2 (D. Minn. Sept. 12, 2011) (transferring case to new venue after entering TRO); see also Mo. Housing Dev. Comm'n v. Brice, 919 F.2d 1306 (8th Cir. 1990) (citation omitted) (noting that more than one district may serve as a proper venue).  Therefore, jurisdiction is proper.[4]

**II. TRO**

A TRO is an extraordinary equitable remedy, and the movant bears the burden of establishing its propriety.  See Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).  The court considers four factors in determining whether a TRO should issue: (1) the threat of irreparable harm to the movant in the absence of relief, (2) the balance between that harm and the harm that the relief may cause the non-moving party, (3) the likelihood of the movant's ultimate success on the merits and (4) the public interest.  See Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

---

[4] DeCelles also appears to argue that venue is improper.  A motion to transfer venue, however, is not before the court.

As an initial matter, the court must determine whether Minnesota or Arizona law applies to this dispute. The court applies choice-of-law rules under diversity jurisdiction. See Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co., 325 F.3d 1024, 1028 (8th Cir. 2003). The Agreement states that "[t]he law of the state of Minnesota shall govern the terms, interpretation, and enforcement of the Agreement." Campbell Decl. Ex. 1, at 5. Minnesota courts traditionally enforce choice-of-law provisions. See Milliken & Co. v. Eagle Packaging Co., 295 N.W.2d 377, 380 n.1 (Minn. 1980). Therefore, the court applies Minnesota law.

**A.   Irreparable Harm**

LTF argues that the continued competition by DeCelles in violation of the Agreement will result in irreparable harm. To show irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). "[P]otential loss of goodwill qualifies as irreparable harm." Id. at 426. Irreparable harm is presumed, where, as here, a "professional employee[] ... acquire[s] influence over patients or clients of their employer." See Rosewood Mortg. Corp. v. Hefty, 383 N.W.2d 456, 459 (Minn. Ct. App. 1986) (citation omitted). Moreover, DeCelles acknowledged that "immediate irreparable damage will result to LTF if [the] employee breaches

any of the covenants set forth in this Agreement." Campbell Decl. Ex. 1, at 4. Therefore, this factor weighs in favor of LTF.

### B.   Balance of Harms

The court has already determined that plaintiff's goodwill is harmed by defendant's acts. Balanced against that harm is the harm to the defendant's ability to work as a personal trainer. Such harm is lessened, however, by the fact that there is no evidence in the record that a TRO will prevent DeCelles from working. Cf. CDI Energy Servs., Inc. v. W. River Pumps, Inc., 567 F.3d 398, 403 (8th Cir. 2009) (holding that balance of harms favored defendant when it "appear[ed] undisputed that an injunction would put the defendants out of business"). Indeed, DeCelles is only prevented from working within a five mile radius of LTF facilities. See Campbell Decl. Ex. 1, at 2. Therefore, this factor weighs in favor of LTF.

### C.   Likelihood of Success on the Merits

The court next considers the likelihood that the movant will prevail on the merits. S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992). A TRO "motion is too early a stage of the proceedings to woodenly assess a movant's probability of success on the merits with mathematical precision." Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 624 (8th Cir. 1987). The court does not decide whether the movant will ultimately win, or if a

greater than fifty-percent likelihood of success exists. See Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 371 (8th Cir. 1991).

LTF alleges claims for breach of contract, misappropriation of trade secrets, conversion, breach of the duty of loyalty, unfair competition and tortious interference with prospective business relationships. LTF need only demonstrate that it is likely to succeed on one claim in order to satisfy this prong of Dataphase. See United Healthcare Ins. Co. v. AdvancePCS, 316 F.3d 737, 742–43 (8th Cir. 2002).

Although disfavored, noncompete agreements are enforced when reasonable and supported by adequate consideration. See Prow v. Medtronic, Inc., 770 F.2d 117, 120 (8th Cir. 1985) (interpreting Minnesota law). To determine the reasonableness of a noncompete agreement, the court considers: (1) whether the restraint is necessary for the protection of the business or goodwill of the employer, (2) whether the restraint is greater than necessary to adequately protect the employer's legitimate interests, (3) how long the restriction lasts and (4) the geographic scope of the restriction. Id. (citing Bennett v. Storz Broad. Co., 134 N.W.2d 892, 899 (1965)).[5]

---

[5] The court notes that Arizona supplies a similar analysis. See Compass Bank v. Hartley, 430 F. Supp. 2d 973, 979–81 (D. Ariz. 2006).

In the present action, restraint is necessary to protect the legitimate interest of LTF in its "goodwill, trade secrets, and confidential information."  Medtronic, Inc. v. Advanced Bionics Corp., 630 N.W.2d 438, 4556 (Minn. Ct. App. 2001) (citation omitted).  Further, the covenant is narrow in its geographic scope and length of time.  See, e.g., Boston Scientific Corp. v. Duberg, 754 F. Supp. 2d. 1033, 1039 (D. Minn. 2010) (citation omitted) (noting that one-year restrictions are "consistently found" to be reasonable); Overholt Crop Ins. Serv. Co. v. Bredeson, 437 N.W.2d 698, 703 (Minn. Ct. App. 1989) (upholding a geographic restriction that was limited to area necessary to protect former employer).  Moreover, consideration is not an issue.  See Overholt Crop Ins. Serv. Co., 437 N.W.2d at 702 (explaining that "no independent consideration is necessary" to support a noncompete agreement when entered into at inception of employment).  Therefore, because the covenant is reasonable, plaintiff is likely to succeed in its breach of contract claim, and this factor weighs in favor of LTF.[6]

---

[6] Even if the noncompete was unreasonable, the court has the power to "blue pencil" the Agreement.  See Witzke v. Mesabi Rehab. Servs., Inc., 768 N.W.2d 127, 129 n.1 (Minn. Ct. App. 2009) (citation omitted) (giving court discretion "to modify unreasonable restrictions on competition in an employment agreement by enforcing restrictions only to the extent reasonable"); see also Campbell Decl. Ex. 1, at 4 ("If a court of competent jurisdiction holds that the restrictions ... are unreasonable under the circumstances then existing, the parties to this Agreement agree that the Court shall substitute the maximum period, scope, or geographical area reasonable under the circumstances.").

**D.   Public Interest**

The public interest does not strongly favor one party over the other.  There is a public interest in upholding contractual agreements.  See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 805 (8th Cir. 2003).  There also is a public interest in unrestrained competition.  See Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 505 (8th Cir. 1987).  Here, it appears that DeCelles is engaging in competition that is in violation of the Agreement.  Therefore, the public interest factor favors LTF.  Accordingly, based upon a balancing of the four Dataphase factors, a TRO is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   Plaintiff's motion for a temporary restraining order [ECF No. 2] is granted in part;

2.   Defendant whether alone, through an LLC or other corporate entity, or in concert with others, including any officer, agent, employee, and/or representative of Pro Fitness is restrained from directly or indirectly:

    a.   Being employed by, contracting with, or being connected in any manner with, any business competitive with LTF within

a five mile radius of any place of business owned or affiliated with LTF that offers or intends to offer personal training;

b. Calling upon any of LTF's members, customers, or clients for the purpose of soliciting or selling to any such persons any products or services similar to those of LTF;

c. Providing services to, diverting or taking away any of LTF's clients;

d. Soliciting any of LTF's employees;

e. Communicating, disclosing, divulging or furnishing any of LTF's confidential and proprietary information or trade secrets to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever;

f. Using any of LTF's confidential and proprietary information or trade secrets; or

g. Interfering with LTF's current prospective business relations;

3. Defendant shall immediately cease employment with Pro Fitness;

4. Defendant shall return all of LTF's confidential, proprietary, and trade secret information in his possession and control, including, but not limited to, all member files and contracts;

5.  Defendant shall preserve all documents and data of any nature whatsoever, including but not limited to electronic documents, electronic mail, and corporate documents of or relating to LTF or Pro Fitness, and is not to destroy any documents or data of any nature whatsoever during the pendency of this action;

6.  The parties may engage in expedited discovery, which includes one, eight-hour deposition per side;

7.  Plaintiffs shall post a bond of $5,000 pursuant to Federal Rule of Civil Procedure 65 within two business days of the issuance of this order; and

8.  This order shall remain in effect for fourteen days.

Dated:  February 28, 2012

                                                    s/David S. Doty  
                                                    David S. Doty, Judge  
                                                    United States District Court